**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

**Case No. 14-20122-CIV-WILLIAMS**

KOREA LINE CORPORATION

      Plaintiff,

v.

WORLD FUEL SERVICES CORPORATION

      Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant World Fuel Services

Corporation's ("WFS") motion for summary judgment (DE 24), which has been fully

briefed (DE 29, 34) and argued before the Court.  Korea Line Corporation ("KLC") filed

this action seeking damages against WFS for allegedly providing off-specification fuel to

the vessel M/V *Samsun Ambition*.[1]  (DE 1).

      KLC alleges that as a result of deficiencies in the fuel, the M/V *Samsun Ambition*

suffered a series of breakdowns to its engine.  The breakdowns necessitated a host of

repairs, required that the fuel be debunkered,[2] and resulted in Samsun Logix

Corporation instituting arbitration proceedings against KLC, for which KLC is potentially

---

[1] KLC sub-chartered this vessel from its time charterers Sealink Shipping Co. Ltd., who chartered the vessel from its "disponent owners" Samsun Logix Corporation.  (DE 1 ¶ 5).  A "'[d]isponent owner' is the party who has control of a commercial vessel, regardless of whether it is the actual registered owner."  *See Blue Marine Shipping SA de CV v. Gulmar Offshore Middle E. LLC*, Case No. 309CV555/MCR/MD, 2010 WL 1687737, at *2 n.4 (N.D. Fla. 2010) (quoting *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 468 n.8 (5th Cir. 1984)).

[2] The fuel is referred to as bunkers and the process of removing the allegedly off-specification fuel from the tanker is known as debunkering.

liable in an amount in excess of $1.6 million dollars.  (DE 1 ¶¶ 9-12).  The only issue

before the Court is the enforceability of a limitation of liability clause found in the

General Terms and Conditions ("GTC") of the Parties' fuel contract.[3]  (DE 26 at 1).

## I.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  Under this standard, "[o]nly disputes over facts that might

affect the outcome of the suit under the governing [substantive] law will properly

preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  And any such dispute is "genuine" only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence

in the record, "including depositions, documents, electronically stored information,

affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  The Court "must view all the evidence and

all factual inferences reasonably drawn from the evidence in the light most favorable to

the nonmoving party, and must resolve all reasonable doubts about the facts in favor of

the non-movant."  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008)

(quotation marks and citations omitted).  At the summary judgment stage, the Court's

task is not to "weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

---

[3] The Court stayed the remainder of the case pending the resolution of related arbitration and litigation.  (DE 16).

## II.   UNDISPUTED FACTS

The following facts are not in dispute.  KLC began operating in 1968.  (DE 24 Statement of Undisputed Facts ("SUF") ¶ 11).  It regularly orders fuel during the course of its ordinary, everyday business.  Despite having had vessels supplied by WFS under the same GTC, hundreds of times, KLC has never attempted to negotiate the limitation of liability disclaimers in the GTC.  (*Id.* ¶¶ 7-10).  For the *Samsun Ambition*, KLC was responsible for securing all fuel during its charter period; it contracted with WFS to purchase 650 metric tons of fuel on March 18, 2008.  (*Id.* ¶¶ 1-2).  WFS contracted with Chemoil Corporation to provide the fuel, which was delivered on March 25, 2008.  (SUF ¶ 3).

The sales contract contained the following language: "THIS CONFIRMATION IS GOVERNED BY AND INCORPORATES BY REFERENCE SELLER'S GENERAL TERMS AND CONDITIONS."  (SUF ¶ 2) (capitalization in original).  The GTC stated in relevant part:

> IN ANY EVENT, SELLER'S LIABILITY HEREUNDER FOR ANY CLAIMS, WHETHER ARISING FROM QUALITY, QUANTITY, ACCIDENT, DELAY, SPILL OR OTHER CAUSE, SHALL NOT EXCEED THE PRICE OF THAT PORTION OF THE PRODUCT SOLD HEREUNDER ON WHICH LIABILITY IS ASSERTED."

(SUF ¶ 5) (capitalization in original).

The Parties dispute several matters, such as whether the fuel was contaminated and whether it was paid for in full, but these are irrelevant to the sole issue before the Court.  (DE 34 at 2).  With regard to the question of whether the limitation of liability clause is enforceable, there is no genuine dispute of material fact.

## III.  ANALYSIS

In order for a limitation of liability clause in a maritime contract to be enforceable the following three conditions must be met: (1) the clause must "clearly and unequivocally indicate the parties' intention," (2) it must "not absolve the [party] of all liability and must still provide a deterrent to negligence," and (3) "the parties must be of equal bargaining power to prevent overreaching."  *See Diesel "Repower", Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1324 (11th Cir. 2001).

Here, the *Diesel "Repower"* test is satisfied.  First, the limitation of liability clause in the GTC clearly indicates the Parties' intent.[4]  Clause (6)(f) of the GTC provides that the seller's liability "FOR ANY CLAIMS, WHETHER ARISING FROM QUALITY, QUANTITY, ACCIDENT, DELAY, SPILL OR OTHER CAUSE, SHALL NOT EXCEED THE PRICE OF THAT PORTION OF THE PRODUCT SOLD HEREUNDER ON WHICH LIABILITY IS ASSERTED."  (DE 24, Ex. C) (capitalization in original).  The Parties clearly intended to limit WFS's liability to the cost of the fuel.  "After all, the best evidence of intent is the contract's own language, and its plain meaning controls." *Architectural Ingenieria Siglo XXI, LLC*, 2015 WL 3609333, at *9.

---

[4] KLC does not contest that the contract incorporated the GTC.  The sales contracted stated:

> THIS CONFIRMATION IS GOVERNED BY AND INCORPORATES BY REFERENCE SELLER'S GENERAL TERMS AND CONDITIONS IN EFFECT AS OF THE DATE THAT THIS CONFIRMATION IS ISSUED. THESE INCORPORATED AND REFERENCED TERMS CAN BE FOUND AT WWW.WFSCORP.COM. ALTERNATIVELY, YOU MAY INFORM US IF YOU REQUIRE A COPY AND SAME WILL BE PROVIDED TO YOU.

(SUF ¶ 2) (capitalization in original).  "[W]here a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, Case No. 13-13877, 2015 WL 3609333, at *9 (11th Cir. June 10, 2015) (quoting *OBS Co. v. Pace Const. Corp.*, 558 So. 2d 404, 406 (Fla. 1990)).

KLC argues that the language from the GTC quoted above is rendered ambiguous by the next sentence in the clause (*see* DE 29 at 14), which states:

> FURTHERMORE, NO LIABILITY WILL BE BORNE BY SELLER FOR (1) ANY DEMURRAGE OR OTHER VESSEL DELAY OR FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM THE EXERCISE OF SELLER'S RIGHT TO SUSPEND AND/OR TERMINATE DELIVERY OF PRODUCT, OR (2) ANY ACTS OR OMISSIONS OF AGENTS AND/OR SUBCONTRACTORS OF SELLER, INCLUDING, WITHOUT LIMITATION, FUEL TRANSPORTERS OR FUELING AGENTS.

(DE 24, Ex. C) (capitalization in original).  The Court does not read these two sentences to conflict.  The first sentence limits WFS's total liability to the cost of the fuel, and the second sentence disclaims liability for certain types of damages.  The Court finds that the GTC "clearly and unequivocally indicate[s] the parties' intention" to limit WFS's liability to the cost of the fuel, which in this case amounted to $341,250.  (DE 29 at 4).

The second requirement of the *Diesel "Repower"* test is that the limitation of liability clause not "absolve the party of all liability and the liability risk must still provide a deterrent to negligence."  *In re Boskalis Westminster Intern. B.V.*, 975 F. Supp. 2d 1238, 1243 (S.D. Fla. 2012).  WFS did not "totally absolve [itself] of all liability;" it disclaimed liability for certain types of damages, and limited its total liability to the cost of the fuel provided. *La Esperanza de P.R., Inc. v. Perez y Cia. De Puerto Rico, Inc.*, 124 F.3d 10, 19 (1st Cir. 1997).  Under these terms, WFS is potentially liable for over a quarter of a million dollars in damages.

KLC contends that this sum is insufficient, arguing that "WFS' ultimate liability risks are close to nothing . . . ."  (DE 29 at 13).  The Court disagrees; the hundreds of thousands of dollars that WFS is potentially liable for amounts to more than one fifth of KLC's potential $1.6 million liability.  Finally, the Court notes that similar limitation of

liability provisions have been found to be enforceable.  *See Ace Am. Ins. Co. v. First Choice Marine, Inc.*, Case No. 8:07-CV-1473-T-17TBM, 2010 WL 3125945, at *8 (M.D. Fla. July 29, 2010) (enforcing a limitation of liability clause because "[t]he Limited Warranty Agreement does not absolve Defendant Mercury Marine of all liability, and provides a deterrent to negligence by exposing Defendant Mercury Marine to the risk of refunding the purchase price of the Mercury product.").  Consequently, the Court finds that the limitation of liability clause at issue here survives the "fact-specific inquiry" required under the second step of the *Diesel "Repower"* test.  *Diesel "Repower"*, 271 F.3d at 1325.

The final requirement of the *Diesel "Repower"* test is that the "parties must be of equal bargaining power to prevent overreaching." *Diesel "Repower"*, 271 F.3d at 1324. However, a limitation of liability clause will not be found unenforceable due to a small disparity in bargaining power: "[t]here must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause." *See Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 720 (8th Cir. 2003) (applying an analysis similar to the *Diesel "Repower"* three-step test, but deviating by holding that in the context of slip rental agreements a marina may absolve itself of all liability for negligence.).

KLC does not meaningfully dispute that this requirement is met, although in its statement of the facts it does assert that "in general the bargaining power of bunkers suppliers is greater than that of bunker buyers." (DE 29 at 1-2). Any such disparity in bargaining power between fuel suppliers and fuel buyers is not sufficient to affect this

inquiry.  KLC is a sophisticated commercial party that has been in business since 1968, regularly ordering fuel in the course of that business.  (SUF ¶¶ 10–11).  There is no evidence that WFS overreached in negotiating this fuel contract with KLC; they have conducted business—with KLC—according to the same GTC hundreds of times.  (SUF ¶ 7).  Accordingly, the limitation of liability clause in the GTC satisfies the requirements of *Diesel "Repower"* and is enforceable here.

KLC raises several other arguments against the enforcement of its contract with WFS, each of which fails.  KLC first argues that it is entitled to full damages despite the limitation of liability clause because its transaction with WFS was governed by the International Convention for the Prevention of Pollution ("MARPOL"), 1340 U.N.T.S. 62, which it claims establishes an express warranty against fuel which "jeopardizes the safety of ships or adversely affects the performance of the machinery . . . ." (*See* DE 29 at 4-5).  KLC argues that the liability limitation clause in the GTC applies only to "'implied conditions and warranties" and thus does not limit WFS's liability under the express warranty created by MARPOL.  (DE 29 at 6).

Assuming that a private party has standing to enforce MARPOL violations, KLC failed to present, and the Court has not found, any authority interpreting MARPOL to remove sophisticated parties' ability to contract for fuel on their preferred terms. Nonetheless, even if MARPOL applies in the way KLC argues, KLC failed to provide 60-day notice to WFS of its intent to bring this MARPOL claim, which is "a condition precedent to instituting suit under § 1910(a)," the citizen suit provision of MARPOL. *See* 33 U.S.C. § 1910(b); *Giuseppe Bottiglieri Shipping Co. S.P.A. v. U.S.*, 843 F. Supp. 2d 1241, 1246 (S.D. Ala. 2012).  Additionally, 33 U.S.C. § 1910(a)(1) "bar[s] claims

based on wholly past violations.  *See Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 731-34 (S.D. Tex. 2012).  Any potential claim KLC had against WFS under MARPOL is thus unavailable, as it targets conduct beyond the purview of the treaty's citizen suit provision.

KLC next argues that enforcing this contract would violate public policy.  KLC posits that there exists an "undeniably strong public policy in favor of protection of marine safety and the environment" and that this policy "outweighs WFS's interest in enforcing the limitation clause."  (DE 29 at 6).  KLC cites no relevant case supporting its contention that there is a general public policy of environmental protection capable of overriding the "strong public policy in favor of enforcing contracts as written and agreed upon."  *Eco Solutions, LLC v. Verde Biofuels, Inc.*, 518 F. App'x 790, 792 (11th Cir. 2013).  Even if such a laudable policy existed, it is unclear why it would apply here where the damage at issue was to the ship's engine and had no ecological impact.  Thus, the Court finds no merit to KLC's public policy argument.

Finally, KLC argues that the exclusive remedy provided by the contract is unconscionable and fails of its essential purpose.  KLC cites to a line of cases that support the proposition that when "goods have latent defects which are not discoverable upon receipt and reasonable inspection, a limitation of remedy to return of the purchase price fails of its essential purpose."  *Viking Yacht Co. v. Composite One LLC*, 385 F. App'x 195, 208 (3d Cir. 2010) (internal quotations omitted).  Each of the cases cited by KLC is distinguishable.  Several of these cases dealt with the sale of defective seeds, or farm chemicals, to farmers; critical to the holdings of those cases is the substantial amount of time between the planting of the defective seeds and the growth of the

substandard crop. *See Majors v. Kalo Labs.*, 407 F. Supp. 20, 22 (M.D. Ala. 1975)

("Discovery of any such defect must await the development of the crop, by which time

large consequential damages may be expected to have arisen, caused by the passing

of the planting season and by large expenditures in cultivation."); *TRA Farms, Inc. v.*

*Syngenta Seeds, Inc.*, Case No. 5:12-CV-378-MW/EMT, 2014 WL 3844823, at *7 (N.D.

Fla. Apr. 4, 2014) ("[T]he farmer is required to expend large sums of money before any

defect in the seed is noticeable, and once a defect is found an entire year's crop might

be worthless."). Similarly, the other cases cited by KLC relied on the unreasonable

amount of time it took to discover the latent defect at issue, or the inability to discover

the defect under reasonable inspection, in holding that the liability limitation clause was

unenforceable. *See Petri Paint Co. v. OMG Americas, Inc.*, 595 F. Supp. 2d 416, 424

(D.N.J. 2008) ("Such a (limited) remedy would be wholly inadequate in the case of a

latent defect not discoverable within a reasonable period after receipt of shipment.");

*Neville Chem. Co. v. Union Carbide Corp.*, 294 F. Supp. 649, 655 (W.D. Pa. 1968), *aff'd*

*in part and vacated in part*, 422 F.2d 1205 (3d Cir. 1970) ("A time limitation which

renders warranties ineffective as to latent defects not discoverable within the time

limitation is manifestly unreasonable."); *Viking Yacht Co.*, 385 F. App'x at 207-208

("Limited remedies under the U.C.C. have been held to fail of their essential purpose

when defects in the goods are latent and not discoverable on reasonable inspection.");

*Corneli Seed Co. v. Ferguson*, 64 So. 2d 162, 164 (Fla. 1953) (holding that the

disclaimer clause was unenforceable where the defect in the seeds was latent and

undiscoverable upon inspection).

9

In contrast, the *Samsun Ambition* took delivery of the alleged defective fuel on March 25, 2008 and received its first report from DNV Petroleum Services regarding the quality of the fuel on April 1, 2008—only one week later.  (DE 1 ¶ 10).  Although KLC states that the alleged fuel problem was "discoverable only after the vessel began to experience engine problems," this is inaccurate.  It is not clear that the fuel could not have been tested sooner, and even if it was not possible to test the fuel more quickly, KLC was free to decide that it would avoid the risk by staying in port until it had verified the quality and purity of the fuel.  Latent defects as those defects that are not capable of detection upon "receipt and reasonable inspection."  *Viking Yacht Co.*, 385 F. App'x at 208; *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, Case No. 10-23869-CIV, 2012 WL 1570057, at *10 (S.D. Fla. 2012) (quoting *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977)) (same).  Under these particular circumstances, KLC has not raised a genuine issue of material fact regarding latency because the facts before the Court demonstrate that the defect was capable of detection upon inspection.  Thus, the limitation of liability clause in the GTC is not unconscionable, and the contract does not fail of its essential purpose.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds no reason not to enforce the Parties' contract as written.  Defendant World Fuel Services Corporation's Motion for Summary Judgment (DE 24) is **GRANTED**.  Because the English arbitration has been stayed pending the resolution of the ongoing Korean litigation and the remainder of this case was stayed pending the resolution of those proceedings, the Clerk is directed to

**ADMINISTRATIVELY CLOSE** the case.  The Parties remain under the obligation to file their status report on or before July 17, 2015.

      **DONE AND ORDERED** in chambers in Miami, Florida, this 30 day of June, 2015.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE